Burton L. Carlson Director Division of Employment and Training 1210 Sherman Street Denver, Colorado 80203
Dear Mr. Carlson:
QUESTION PRESENTED AND CONCLUSION
In response to Robert J. Scott's May 27, 1976 request for an opinion on the question:
Can the offices of the District Attorneys in Colorado be considered to be "political subdivisions" of the State for the purpose of extending to the district attorneys and staff of their offices coverage under the State's federal-state social security coverage agreement with the Secretary of H.E.W. pursuant to Section 24-51-704, C.R.S. 1973?
I have prepared this opinion for your consideration and use.
My conclusion is "yes."
ANALYSIS
The Social Security Act of 1935 (hereafter referred to as the "Act") provides for old-age, survivors and disability insurance benefits for individuals who have performed services qualifying as "employment" under the Act (42 U.S.C. § 401 etseq.) Ordinarily any employee of a state or any political subdivision or instrumentality thereof, would be exempted from coverage due to the express exclusion of such employment contained in the Act (42 U.S.C. § 410(a)(7)). However, provision was made in the Act to allow for the Secretary of H.E.W., at the request of any state, to enter into an agreement to extend the insurance system to services performed by individuals as employees of the state or any political subdivision thereof (§ 218 of the Act, 42 U.S.C. § 418).
C.R.S. 1973, 24-51-701 et seq., creates the structure by means of which the Colorado Division of Employment and Training, with the approval of the governor, can enter into such a "voluntary agreement" to extend the insurance benefits of the Act to employees of political subdivisions of the state, and Colorado has entered into such a "Section 218" agreement.
District Attorneys and their staffs have been covered under this agreement, but, until 1975, were considered as employees of the state and the counties they serve. H.B. 1031, passed during the 1975 term of the Colorado legislature, sought to make the offices of the district attorneys an independent coverage group under the Act, by enacting C.R.S. 1973, 20-1-307, defining the offices as "juristic entities" entitled to the status of "political subdivisions" pursuant to C.R.S. 1973, 24-51-701(5) and42 U.S.C. § 418(b)(2). Modification Number 245 to the agreement was forwarded to H.E.W. to reflect this change.
The regional office of the Social Security Administration recently returned the tendered Modification No. 245 without clearance, stating that they felt the officers were not "political subdivisions" as defined in the Act. This action appears to overlook the intention of the Colorado legislature and, as indicated by my answer to your question, appears improper as a matter of law and policy.
The term "political subdivision," as used in section 218 of the Act, 42 U.S.C. § 418(b)(2):
 includes an instrumentality of (A) a State, (B) one or more political subdivisions of a State, or (C) a State and one or more of its political subdivisions.
In that the federal statute fails to define political subdivision one must turn to state law. In Colorado the term political subdivision pursuant to C.R.S. 1973, 24-51-701(5), for the purposes of social security coverage:
 includes an instrumentality of this state, or of one or more of its political subdivisions, but only if such instrumentality is a juristic entity which is legally separate and distinct from the state or subdivision and only if its employees are not, by virtue of their relations to such juristic entity, employees of the state or subdivision. "Political subdivision" does not include a school district.
(Emphasis added.)
Effective January 1, 1975, C.R.S. 1973, 20-1-307, was added to the statutes. That section provides:
 Social security coverage. The office of district attorney, including the district attorney and the employees of each such office within each judicial district, shall be considered a juristic entity as described in section 24-51-701, C.R.S. 1973. Each office of district attorney shall enter into an agreement with the director of the division of employment or the department of labor and employment for the purpose of including the district attorney and the employees of his office under the state's federal-state social security coverage agreement with the secretary of the United States department of health, education, and welfare, pursuant to section 24-51-704, C.R.S. 1973.
(Emphasis added.)
The regional office's position arises from an apparent challenge to the legislature's action in statutorily defining the offices of the district attorneys as "juristic entities" and, hence, as "political subdivisions" of the state for the purpose of acquiring social security coverage. I must respectfully disagree. In my opinion, analysis of the Act, the intent of the legislature and relevant case law compels the conclusion that, for the limited purpose of acquiring coverage under the Act, the offices of the district attorneys are political subdivisions of the state.
At the outset, it should be noted that courts have consistently held that the Act:
 is remedial legislation, to be liberally construed to effect its purpose — to provide some expectation of security with the advent of age or the threat of infirmity . . . . (and) (c)onsequently the emphasis has always been placed on finding a basis for inclusion rather than exclusion. Miles v. Celebreze,233 F. Supp. 767 (W.D.S.C. 1964).
Eastman v. Celebreze, 240 F. Supp. 142, 144-45 (D.C. Ohio 1965). Accord: Delno v. Celebreze, 347 F.2d 159
(9th Cir. 1965); Henderson v. Flemming, 283 F.2d 882
(5th Cir. 1960); Harper v. Flemming, 288 F.2d 61 (4th Cir. 1961); Hoffman v. Gardner, 369 F.2d 837, 841 (8th Cir. 1966); and Secretary of H.E.W. v. Snell,416 F.2d 840, 843 (5th Cir. 1969). In Secretary ofH.E.W. v. Snell, supra, the court made the statement that 42 U.S.C. § 418 designed to extend benefits to all state employees who do not receive state retirement benefits, and, particularly, that states are given considerable discretion in including or excluding employees in their section 418 agreements. With this declaration of public policy in mind, it would seem that the regional office should seek an interpretation of the term "political subdivision" which would give effect to Colorado's extension of coverage to state district attorneys and their staffs.
The Colorado constitution establishes the "office of district attorney" as an entity with specific functions within each judicial district of the state. (art. VI, section 13.) Prior to H.B. 1031, district attorneys were covered under the Act and the state's agreement as employees of the state and the counties they served.
This fact serves to show that district attorneys have been considered to be instrumentalities of the state and its political subdivisions, i.e., the counties, thereby satisfying42 U.S.C. § 418(b)(2)(C). Colorado's approach through H.B. 1031, C.R.S. 1973, 20-1-307, merely clarifies and implements the constitutional status of the office of the district attorney.
The regional office has disregarded this constitutional framework as well as the statutory declarations with respect to the structure of the district attorneys' offices. Within the broad concept of political subdivision contained in the Act, which includes instrumentalities of the state or its political subdivisions (or combinations of both), there is certainly an ample basis for a less restrictive definition of political subdivision than that apparently being applied by the regional office.
Although the term "political subdivision" has been defined by numerous courts, there appears to be no case in point with respect to the definition to be used in section 418 of the Act. The cases speak of a number of elements which adhere to the concept of political subdivision, but no one definitive set of standards seems to exist. However, a review of some of these cases does provide a framework of reference for this question. In Allison v. Corker, 67 N.J.L. 596, 52 A. 362 (1902) quoted in Arkansas State Highway Commission v.Clayton, 226 Ark. 712, 292 S.W.2d 77, 79 (1956) "political subdivision" was defined as an entity:
 (embracing) a certain territory and its inhabitants, organized for the public advantage and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions; and that to the electors residing within each is to some extent committed the power of local government, to be wielded either mediately or immediately for the peculiar benefit of the people there residing.
In Unemployment Compensation Commission of North Carolina v.Wachovia Bank Trust Co., 215 N.C. 491,2 S.E.2d 592, 595-96, (1939), the court stated:
 Perhaps it is impossible to formulate a satisfactory definition of the term "instrumentalities of government" which would be applicable in all cases . . . . Each case must be determined as it arises. Generally speaking, however, it may be said that any commission, bureau, corporation, or other organization, public in nature, created and wholly owned by the government for the convenient prosecution of its governmental functions, existing at the will of its creator, is an instrumentality of government; . . . .
And in Dugas v. Beauregard, 155 Conn. 573, 236 A.2d 87,98 (1967), cited with approval in Kucera v. City ofWheeling, 153 W. Va. 531, 170 S.E.2d 217, 220 (1969), the court found:
 The attributes which are generally regarded or distinctive of a political subdivision are that it exists for the purpose of discharging some function of local government, that it has a prescribed area, and that it possess authority for subordinate self-government through offices selected by it.
See also: Maryland-National Capital Park and PlanningCommission v. Montgomery County, 267 Md. 82,296 A.2d 692 (1972). Under the varying definitions found in these illustrative cases one must conclude that no definitive definition exists with which one can compare and analyze the definition of political subdivision as used by Colorado in making the offices of the district attorneys such entities for the limited purposes of acquiring social security coverage.
Certainly the offices, i.e. the district attorneys acting through their staffs, represent a fixed geographic area and a specific body of electors. Each district attorney is an elected representative of the people within his particular judicial district with specifically described statutory duties which are public and governmental in nature. See: C.R.S. 1973, 20-1-101et seq; 42 U.S.C. § 1983; and Imbler v.Pachtman, 424 U.S. 409, 47 L.Ed.2d 128 (1976). The district attorneys are uniquely responsible for their districts and are subject to recall according to law. Colorado constitution art. XXI. The district attorneys are authorized to hire and fire their own staffs. C.R.S. 1973, 20-1-201 et seq.
The regional office also questioned whether the district attorneys' offices have the right to sue and be sued. The district attorney must be bonded to secure faithful execution of the duties of his office, and an action exists by law for violation of the provisions thereof. C.R.S. 1973, 20-1-102. Many cases have involved suits by or against the district attorneys, their offices or their deputies, which clearly indicate the ability to sue and be sued. See: McMullin v. Board ofCommissioners of Montrose County, 29 Colo. 478, 68 P. 779
(1902); McDonald v. Lakewood Country Club, 170 Colo. 355,461 P.2d 437 (1969); Johns v. Powell, 532 P.2d 971
(Colo.App. 1974); and People ex rel Dale Tooley v. DistrictCourt, 549 P.2d 774 (Colo. 1976).
The district attorneys' offices perform as instrumentalities of the state. The offices are constitutionally distinct and separate from other county offices and they are separate from the state. They have been established as unique entities with specific governmental purposes, i.e., the duty and responsibility to provide specific legal services to a certain geographic area and its inhabitants. The offices have the ability to hire, fire and establish policy for their employees. Because they have the requisite elements of a political subdivision it is my opinion that the offices of the district attorneys can be and are political subdivisions for the purposes intended by H.B. 1031, C.R.S. 1973, 20-1-307, i.e. as a proper coverage group for social security purposes.
It is perhaps important to note that some courts have construed entities to be political subdivisions for some purposes but not for others, implying that the offices of the district attorneys may be construed as governmental bodies cognizable as political subdivisions for the limited purposes of C.R.S. 1963, 20-1-307, but not as such for more expansive functions or in a larger sense of the term. In Conner v. Herd, 442 S.W.2d 501 (Mo. 1969) the court held that a fire protection district was indeed properly designated as a "political subdivision" for its governmental purposes, but that it was not one for appellate jurisdictional purposes. Accord, Kansas City AreaTransportation Authority v. Ashley, 478 S.W.2d 323, 324
(Mo. 1972). Thus, whatever the ambiguities inherent in the term "political subdivision", it is my conclusion that the intent of the legislature reflected in C.R.S. 1973, 20-1-307 must be given effect.
SUMMARY
The district attorneys are juristic entities for purposes of C.R.S. 1973, 24-51-701 et seq. and 42 U.S.C. § 401et seq. to qualify for the purpose of acquiring social security coverage.
Very truly yours,
 J.D. MacFARLANE Attorney General
PROSECUTORS SOCIAL SECURITY COUNTIES MUNICIPAL CORPORATIONS
H.B. 1031 (1975 Sess.)
42 U.S.C. § 401
C.R.S. 1973, 24-51-701
C.R.S. 1973, 20-1-307
Colo. Const. art. VI, § 13
Colo. Const. art. XXI
LABOR EMPLOYMENT DEPT. Empl Trng Div Empl Adm Pess Public Emp Soc Sec.
The district attorneys are juristic entities for purposes of C.R.S. 1973, 24-51-701 et seq. and 42 U.S.C. § 401 et seq. to qualify for the purpose of acquiring social security coverage.