In re ARMORED CAR ANTITRUST LITIGATION.

MORGAN GUARANTY TRUST COMPANY OF NEW YORK, Appellant,

State of Maryland, Appellate-Cross Appellee,

v.

FOOD FAIR STORES, INC., et al., Appellees,

Brink's Inc. and Wells Fargo Armored Service Corp., Appellees-Cross Appellants.

No. 79–3301.

United States Court of Appeals, Fifth Circuit. Unit B

May 21, 1981.

Davis, Polk & Wardwell, James W. B. Benkard, New York City, for Morgan Guaranty Trust Co. of N.Y.

Timothy J. Shearer, Charles O. Monk, II, Asst. Attys. Gen., Antitrust Division, George A. Nilson, Deputy Atty. Gen., Alan M. Barr, Asst. Atty. Gen., Stephen H. Sachs, Atty. Gen., Baltimore, Md., for State of Md.

Harold E. Kohn, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for Food Fair Stores, Inc., et al. and Philadelphia Elec. Co.

David I. Shapiro, James vanR. Springer, Dickstein, Shapiro & Morin, Washington, D.C., for Commonwealth of Mass., Sunnydale Farms, and State of Conn.

John E. Burke, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for LDC, Inc., et al. and The Peoples Gas Light & Coke Co., et al.

Emmet J. Bondurant, Trotter, Bondurant, Griffin, Miller & Hishon, Atlanta, Ga., Daniel R. Mudoch, Samuel W. Murphy, Jr., Donovan, Leisure, Newton & Irvine, New York City, for Brink's Incorporated.

William E. Willis, Sullivan & Cromwell, New York City, D. Robert Cumming, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for Wells Fargo Armored Services Corp.

Denis McInerney, Cahill, Gordon & Reindel, New York City, John C. Staton, Jr., King & Spalding, Atlanta, Ga., for Purolator, Inc.

Berger & Montague, P.C., David Berger, Merrill G. Davidoff, Philadelphia, Pa., for Morgan Guaranty Trust Co.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and MARKEY *, Chief Judge.

MARKEY, Chief Judge:

The State of Maryland (Maryland) and Morgan Guaranty Trust Co. (Morgan) have

* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

separately appealed different aspects of a final judgment and orders merged therein. The final judgment approved the settlement of sixteen consolidated antitrust class actions and authorized distribution of a multi-million dollar settlement fund to some 8,000 class members who filed approved claims respecting purchases of armored car and related services from January 1, 1968 through February 21, 1978.

Non-class member Maryland seeks reversal of the district court's ruling that its Attorney General's letter to the court did not withdraw the filed claims of three Maryland political subdivisions which had neither opted-out nor expressly authorized the Attorney General's effort.

Defendants Brink's Inc. (Brink's) and Wells Fargo Armored Service Corp. (Wells), separately sued by Maryland, cross-appealed the determination that the letter did exclude various other political subdivisions which had not filed claims, but which also neither opted out nor expressly authorized The Attorney General's efforts.[1]

Class member Morgan, which filed its claim six and one-half months late, contends that denial of its claim was an arbitrary action offensive to traditional notions of fairness and equity.

We reverse the ruling that the Maryland Attorney General's letter did not opt from the proposed settlement the three Maryland political subdivisions, affirm the ruling that the letter did exclude other political subdivisions, and affirm the denial of Morgan's late claim.

### Facts

The proceedings culminating in approval of the settlement are fully described in the district court's order reported as *In re Armored Car Antitrust Litigation*, 472 F.Supp. 1357 (N.D.Ga.1979). The consolidated actions were maintained as a class suit on behalf of "all purchasers of armored car services" against Brink's, Wells, and, in some cases, Purolator Security, Inc. (Purolator).[2] The class claimed that defendants had violated various provisions of the antitrust laws in the course of providing armored car and related services in various parts of the United States, beginning at least as early as 1968 and continuing at least until August 1975. The parties began intensive settlement negotiations after transfer of the lawsuits to Atlanta.

During the discovery period, the parties presented a settlement agreement, involving a fund of $11.8 million plus interest, to the district court. In its Settlement Order # 1 the court found the terms of the settlement agreement fair and equitable. That Order also certified a nationwide class of purchasers, approved as to form the procedure for notice to class members, provided a deadline for class members to opt-out from the settlement, and established a schedule for further proceedings. The Order provided a period of 20 days for the class defendants to withdraw from the settlement agreement after they had seen the "opt-out list".

Pursuant to that Settlement Order # 1, some 175,000 notices were mailed to potential class members and abridged notices were published in eleven major newspapers across the country. The notice set a 30 day period from May 19, 1979 within which to file objections, and a 45 day period from that date within which to file claims. In response, eight thousand class members, including the three Maryland political subdivisions, filed timely claims. Over two hundred recipients, including Maryland, per its Attorney General, filed timely requests to opt out of the settlement.

The letter from Maryland's Attorney General included:

Pursuant to the Notice of Proposed Settlement, Determination of Conditional Class and Hearing in the above-referenced litigation [In re: Armored Car An-

---

1. The State of California withdrew its appeal. Wells, having settled with the State of Maryland, withdrew its cross-appeal.

2. Purolator is neither an appellant nor a cross-appellant, but appears on the briefs as an appellee in relation to the issues raised in the appeal of the State of California.

titrust Litigation, Civil Action No. 78–139A (ALL CASES)] dated May 19, 1978, the State of Maryland, on its own behalf *and on behalf of its political subdivisions*, including but not limited to, all Maryland county and local governments and State, county, and local governmental agencies, commissions, school boards, hospitals, and universities, hereby requests to be excluded from the conditional class and the proposed settlement. (Emphasis ours.)

In light of considerable economic data, testimony and argument, the district court entered a Final Judgment and Order approving the settlement agreement and a final distribution plan to be carried out under that agreement. The district court stated that, "without affecting the finality of this Final Judgment", it retained a continuing jurisdiction to construe and enforce it, to direct payments from the fund, and to conduct similar administrative functions.

Acknowledging the power and right of the Maryland Attorney General to opt out on behalf of the State and its political subdivisions, the court ruled the opt-out letter ineffective as to the three subdivisions which had filed claims, saying:

We find and conclude that the Maryland Attorney General opted out of this class action settlement on behalf of the state and all its political subdivisions except Anne Arundel County, and Baltimore Mayor and City Council and the Baltimore County Revenue Authority. These three exceptions signalled their desire to proceed separately by filing claims to the settlement fund. They have not notified the court of an intention to change course and withdraw their applications for a share in the fund. The

representative opt out was therefore, effective, but with the stated limitation.

Maryland moved for reconsideration of the judgment, submitting affidavits by independent counsel for the three subdivisions, which stated that those three subdivisions had presumed and intended that the opt out on their behalf be effective. The district court, concluding that those subdivisions were seeking to opt out long after the time allowed for doing so, denied the motion.

Morgan said its failure to claim a share of the settlement until six months after the opt out deadline was due to innocent inadvertence. Adopting the recommendation of the settlement administration committee, the court denied Morgan's claim.

## Opinion

### Maryland Opt Out

The authority of the Attorney General of Maryland is outlined in Article V, section 3 of the Maryland Constitution.[3] That section gives the Attorney General broad general discretion and responsibility to represent the interests of the State in legal affairs. At the same time, Article V, section 3 gives the General Assembly the authority to assign by law specific legal responsibilities to the state's chief legal officer.

Pursuant to that state constitutional mandate, the Maryland General Assembly has delegated to its Attorney General specific authority to bring suit on behalf of the state or any of its political subdivisions to recover damages provided for under federal law.[4] Md.Com.Law Code Ann. § 11–

---

3. Article V, section 3 of the Maryland Constitution provides:

   (a) The Attorney General shall:

   (1) Prosecute and defend on the part of the State all cases pending in the appellate courts of the State, in the Supreme Court of the United States or the inferior Federal Courts, by or against the State, or in which the State may be interested, except those criminal appeals otherwise prescribed in the General Assembly.

   (2) Investigate, commence, and prosecute or defend any civil or criminal suit or action

or category of such suits or actions in any of the Federal Courts or in the Court of this State, or before administrative agencies and quasi legislative bodies, on the part of the State or in which the State may be interested, which the General Assembly by law or joint resolution, or the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended. . . .

4. Md.Com.Law Code Ann. § 11–209(b)(5) (1975) reads:

209(b)(5) (1975). The text of the Maryland law is permissive in nature and does not require the Attorney General to pursue all antitrust claims asserted by all political subdivisions. However, when the Attorney General elects to act in a representative capacity on behalf of state political subdivisions, Maryland law provides a clear mandate to do so. The authority of a state Attorney General to bring an antitrust action for damages and other relief on behalf of the state, its departments, agencies and political subdivisions without their explicit authorization was upheld in *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266 (5th Cir. 1976), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976).[5]

Baltimore City and the counties of Maryland are political subdivisions of the state. *Howard County Commissioner v. Matthews*, 146 Md. 553, 127 A. 118 (1924). The Baltimore County Revenue Authority ("Authority") is an instrumentality of Baltimore County. *Mass. Transit Administration v. Baltimore County Revenue Authority*, 267 Md. 687, 298 A.2d 413 (1973). The Authority can have no greater autonomy than the political subdivision which created it.[6]

Brink's argues that the Attorney General is authorized to act on behalf of political subdivisions only after those subdivisions have affirmatively consented to such action, and that the subdivisions must be accorded an opportunity to express an intention to proceed separately or to accept representation by the state in a class action. The Attorney General's opt-out letter is characterized by Brink's as an attempt to bind the subdivisions in excess of his grant of authority and in disregard of the notice and consent provisions of Rule 23 of the Federal Rules of Civil Procedure (FRCP) governing class actions.

It is questionable whether Brink's has standing to assert rights of Maryland political subdivisions under any circumstances. *McGowan v. Maryland*, 366 U.S. 420, 429, 81 S.Ct. 1101, 1107, 6 L.Ed.2d 393 (1961). That standing is doubtful indeed ·where, as here, the subdivisions have themselves not only shown no interest in asserting any such rights, but have stated their assumption that the Attorney General's action was on their behalf and in accord with their intent at the time it was taken.

Assuming, however, that Brink's' arguments are properly raised, we find them unpersuasive.

■ That political subdivisions are "persons" under the federal antitrust laws and have independent standing to bring federal antitrust actions, *Chattanooga Foundry and Pipe Works v. Atlanta*, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906),[7] and that "political subdivisions" has been interpreted as including counties, cities, towns and villages, *Maryland-National Capital Park and Planning Commission v. Montgomery County*, 267 Md. 82, 93, 296 A.2d 692, 698 (1972), *see also, State v. Canova*, 278 Md. 483, 365 A.2d 988 (1976), does not preclude the simultaneous authority of the Attorney General to represent those subdivisions. The authority vested in the Attorney General under Md.Com.Law Code Ann. § 11–209(b)(5), coupled with the basic principle that an attorney is presumed authorized to

---

The Attorney General may bring an action on behalf of the State, or any of its political subdivisions to recover the damages provided for by this Subsection or any comparable provision of federal law.

**5.** *Accord New Jersey v. National Broiler Marketing Association, et al.*, No. 75–362A (N.D. Ga., Dec. 30, 1976) (granting motion to reconsider) which follows the rationale of *Exxon* and wherein the particular statutory authority permitting the New Jersey Attorney General to represent the subordinate political subdivisions is acknowledged by defendants to be compara-

ble to the mandate provided to the Maryland Attorney General. *See also: Nash Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981).

**6.** If the political subdivision can be represented by the Attorney General without its express consent, so too can an instrumentality of a political subdivision. For this reason the Authority may be treated as a political subdivision for purposes of this appeal.

**7.** *See*, Md.Ann.Code, Art. 25A §§ 1–7 (1973); *see also* Md.Const. Art. XI–A.

represent the party he claims to represent,[8] are together persuasive of the conclusion that the opt-out notice given by the Attorney General was effective for all political subdivisions and as valid as any action the subdivisions might undertake on their own behalf. *See Florida ex rel. Shevin v. Exxon Corp.* (supra).

We need not reach in this case the question of whether political subdivisions must follow the decisions of the Attorney General, or the question of whether subdivisions may discharge the Attorney General and act on their own behalf, because there is here no dispute as to whether the subdivisions desire the Attorney General to act as their attorney. The evidence establishes that they do. If there were doubt as to the representational status of the Attorney General, it was resolved by the subsequent ratification of the opt-out request by the three claimant subdivisions.

■ Nor do we here deal with a district court's discretion to allow or disallow late filed claims or requests. The Attorney General's opt-out request was timely filed. At that time, he had the power and authority to represent, and did by law represent, the three subdivisions. That the advisability of a ratification did not appear until after the district court denied the request did not mean, as the district court felt, that the subdivisions were then, at that late date, seeking to opt out. If there were a surface conflict between the earlier filing of claims by the three subdivisions and the Attorney General's later but timely letter opting out those subdivisions, the ratification expressing the subdivisions' understanding and intent as of the filing of the letter resolved any such conflict. Hence the court erred in not treating the ratification as retroactive to the timely date of the Attorney General's request. *Restatement (Second) of Agency § 82 (1958); Weitnauer Trading Co. v. Annis,* 516 F.2d 878 (2nd Cir. 1975). As indicated, we need not and do not hold that ratification was required to make the Attorney General's letter effective. Required or not, its presence is sufficient to resolve the apparent conflict in this case.

■ The requirements of Rule 23 (FRCP) were devised to enable numerous unrelated individuals to assert claims involving similar issues or facts in an economic manner through a representative party. *See Calagaz v. Calhoon,* 309 F.2d 248 (5th Cir. 1962). Because the subdivisions are not unrelated, their universal representation by the Attorney General having been established in Article V, section 3 of the Maryland Constitution and in § 11–209(b)(5) of Md.Com.Law Code Ann., Rule 23 serves no purpose with respect to those subdivisions. The notice and opt-out procedures of Rule 23(c)(2) were aimed at protecting parties from being bound to judgment without having authorized the class representative to act on their behalf. Wright & Miller, *Fed.Prac. & Pro.: Civil § 1786.* The Attorney General, however, has a representational status independent of that provided for, and contemplated in, Rule 23. Hence, because the Attorney General's authority and responsibility as representative of the state's political subdivisions does not derive from Rule 23, the notice and opt-out provision of that rule are not binding upon him or her.

Accordingly, we hold that the opt-out letter of the Maryland Attorney General was effective to withdraw the three political subdivisions which had filed a notice of claim, and to exclude the subdivisions which had not filed claims.

Brink's does not argue that its adherence to the settlement agreement was conditioned on absence from the opt-out list of the three Maryland subdivisions when the list was received by Brink's. Nonetheless, because our holding has the effect of placing those subdivisions on the opt-out list, we remand to permit consideration of Brink's' desire, if any, to exercise the withdrawal option provided in Settlement Order # 1.

---

**8.** *See Bethlehem Steel v. Devers,* 389 F.2d 44 (4th Cir. 1968). Where a party seeks to challenge the authority of an attorney to represent his purported client, the burden is on that party to raise and prove the contention.

*Morgan*

Conceding that the allowance or disallowance of its late claim is a matter confided to the discretion of the district court, *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977), Morgan says only that its failure to file a timely claim resulted from inadvertent error, the correction of which would cause no legal prejudice to any party, citing the standards for excuse established under Rules 41(b), 59(c) or 60(b).

Though allowance of a late claim here will not affect the legal rights and liabilities of the parties, it would affect the practical consequences by unfairly reducing the recovery of those who filed timely claims. Nor is there any basis for distinguishing Morgan from other potential claimants who may have refrained from filing late claims in deference to the established deadline.

Morgan received over twenty separate notices. It is difficult to presume that the loss or misplacement of those notices for six months, if such occurred, was entirely due to mere inadvertence. It is at least equally likely that any such loss or misplacement resulted from Morgan's own negligence. If the latter be true, Morgan, not other claimants, must bear the consequences of such negligence. In all events, on the basis of the established record, it is clear that the district court committed no abuse of its discretion in denying Morgan's late claim. *Gypsum, supra.*

## CONCLUSION

Accordingly, that portion of the judgment below which bound to the settlement the three Maryland subdivisions sought to be opted out by the Attorney General is reversed; that portion of the judgment which excluded other Maryland subdivisions from the settlement is affirmed; that portion of the judgment which denied the claim of Morgan is affirmed; and the case is remanded to the district court to permit Brink's to reconsider its adherence to the settlement agreement in light of the withdrawal of the three Maryland subdivisions, and for such further order as the district court may deem just in the exercise of its retained jurisdiction.

*Modified and Remanded.*