The Honorable Tom Sloan State Representative, 45th District 772 Hwy 40 Lawrence, Kansas 66049-4174
Dear Representative Sloan:
You request our opinion concerning whether the Kansas Rural Water Finance Authority (Authority) may borrow funds from the Public Water Supply Loan Fund (Loan Fund) established by K.S.A. 1996 Supp. 65-163e.
The genesis of the Loan Fund is found in the federal Safe Water Drinking Act (Act). The purpose of the Act is to assure that the nation's water supply system serving the public meets minimum national standards for the protection of public health. 41 U.S.C. § 300f etseq. In 1996, Congress amended the Act to include the establishment of a State Drinking Water Treatment Revolving Loan Fund which is designed to ensure that communities will have the financial resources to comply with the Act. 42 U.S.C. § 300j-12. The federal government provides the funds to the states which are deposited into the state loan fund and used to provide loans to community water systems and non-profit community water systems. 42 U.S.C. § 300j-12(a)(2). K.S.A. 1996 Supp. 65-163e(c)(1) allows such loans to be made to municipalities. Municipality is defined at K.S.A. 1996 Supp. 65-163d(b) as follows:
 "`Municipality' means: (1) Any political or taxing subdivision authorized by law to construct, operate and maintain a public water supply system, including water districts; or (2) two or more such subdivisions jointly constructing, operating or maintaining a public water supply system." (Emphasis added.)
Our initial task is to determine whether the Kansas Rural Water Finance Authority is a political or taxing subdivision. The Authority was organized pursuant to the Interlocal Cooperation Agreement Act, K.S.A. 12-2901et seq. The Interlocal Cooperation Agreement Act allows public agencies (e.g. counties, cities, water districts, municipal corporations) to cooperate with each other by exercising their authority for mutual advantage. Areas of cooperation include economic development, public improvements, police protection, educational services, sewage disposal, ambulance service and fire protection. K.S.A. 12-2904. K.S.A. 12-2904a provides that an interlocal agreement between public agencies may authorize the creation of a separate legal entity to conduct the joint action provided for in the agreement. The Authority is such an entity, created in 1987 by interlocal agreement, between two rural water districts for the purpose of providing financial and management advisory services concerning public water systems to its members. Interlocal Cooperation Agreement, Article V. We understand that 42 rural water districts and 2 cities are members of the Authority which is managed by a board of representatives consisting of 5 members elected by the member agencies. Article V, Bylaws of Kansas Rural Water Finance Authority. Officers are elected by the Board. Bylaws, Article VIII. The Authority may be funded by assessments against its members. Bylaws, Article XIV. It may also issue bonds, notes or other evidence of indebtedness in its own name on behalf of its member agencies for purposes for which such agencies are lawfully authorized to issue such items. K.S.A.12-2904a(b). These items of indebtedness are payable only from or secured by property, interest or income of the Authority and cannot constitute a charge against its member agencies. K.S.A. 12-2904a(b).
The Kansas Rural Water Finance Authority has no authority to tax so it is not a taxing subdivision under K.S.A. 1996 Supp. 65-163d(b). Municipality also includes a "political subdivision" so our analysis focuses on whether the Authority is a political subdivision.
The term "political subdivision" is not defined in the statutes that address the Public Water Supply Loan Fund. While the term is defined in the various chapters of the Kansas statutes, its meaning varies according to the context. See K.S.A 1996 Supp. 74-8902 (Kansas Development Finance Authority: political or taxing subdivisions of the state, including municipal and quasi-municipal corporations, boards, commissions, authorities and other subordinate groups supported by public funds); K.S.A. 77-502 (Kansas Administrative Procedures Act: political or taxing subdivisions of the state, including boards, commissions, authorities, councils and other subordinate groups supported by public funds); K.S.A. 1996 Supp. 79-3602 (Kansas Retailers Sales Tax: municipality, agency or subdivision of the state which is authorized to levy taxes); K.S.A.28-137b (legal notices and advertisements: any county, city, township, school district, drainage district, library district, cemetery district, hospital district, community college district, or municipal utility); K.S.A. 1996 Supp. 80-2501 (Townships: township, city or a hospital district); K.S.A. 2-1319 (control and eradication of noxious weeds: an agency or unit of the state authorized to levy taxes).
In general, a political subdivision contemplates a geographical area with boundaries, public elections for representatives, the taxing power and a general public purpose. Bolen v. Board of Firemen, Policemen and FireAlarm Operators' Trustees of San Antonio, Texas,308 S.W.2d 904 (Tx. 1958); Richmond County HospitalAuthority v. McClain, 144 S.E.2d 565 (Ga. 1965); Kucerav. City of Wheeling, 170 S.E.2d 217 (W.Va. 1969);Maryland-National Capital Park and Planning Commissionv. Montgomery County, 296 A.2d 692 (Md. 1972);McClanahan v. Cochise College, 540 P.2d 744 (Arz. 1975); Weston County Hospital Joint Powers Board v.Westates Construction Company, 841 P.2d 841 (Wy. 1992);Old Abe Company v. New Mexico Mining Commission,908 P.2d 776 (N.M. 1995).
 "The constitutional examples of counties, towns and school districts are ones that have the distinctive badges of a political subdivision. Each has a geographical area smaller than the state, each is organized with officers elected by its inhabitants to carry on a governmental function, having a local purpose and provision is made for the levy and assessment of taxes to finance those purposes." Witzenburger v. State of Wyoming, 575 P.2d 1100, 1113
(Wy. 1978).
In Richmond County Hospital Authority, supra, the Court determined that a county hospital authority which lacked the power to tax or elect officials and had no geographical area was not a political subdivision for purposes of workers compensation coverage.
 "The general rule is that an Authority, which is an agency of one or more participating governmental units created by statute for the specific purpose of having delegated to it certain functions governmental in character, is not a political subdivision unless recited to be so in the pertinent constitutional or statutory instruments creating it. The Hospital Authorities Law (citations omitted) has no such language. A cursory analysis of its structure indicates that it was intended to create public corporate agencies of the political subdivisions involved, managed by qualified persons appointed by the governing bodies of such political subdivisions, and having a corporate entity so as to be able to contract with them but without power to tax or to elect officials and without any political geographical area. These latter characteristics are generally inherent in the concept of a political subdivision." 144 S.E.2d at 566.
In Weston County Hospital Joint Powers Board, supra, the Court concluded that a county hospital joint powers board, created by agreement between two towns and a county, was not a political subdivision for purposes of a constitutional provision that required that claims against political subdivisions be itemized in a written statement before being paid.
The Kansas Rural Water Finance Authority is not a political subdivision in the generic sense of the word because it lacks the power to tax, has no prescribed geographic area and the members of its governing board are not elected by the inhabitants. In Attorney General Opinion No. 90-124, Attorney General Robert T. Stephan concluded that a separate legal entity created by interlocal agreement is not a political subdivision of the state for purposes of the Kansas Tort Claims Act. A review of the legislative history of the Public Water Supply Loan Fund reveals no intent to include an entity created by interlocal agreement such as the Authority as an eligible borrower. The testimony received by the House Committee on Energy and Natural Resources referred to local governments as prospective borrowers. Minutes, House Committee on Energy and Natural Resources Interim Study, September 14, 1993, September 15, 1993. Attachments 1, 4, 5.
You posit that because the member agencies are municipalities pursuant to K.S.A. 1996 Supp. 65-163d(b), "then it follows that the Authority stands in the shoes of a member public agency" because the Authority acts as the constituted authority of its member agencies on behalf of which such bonds, notes, or other indebtedness issue. In Weston County Hospital Joint Powers Board,supra, the Court concluded that a separate legal entity created by agreement between two political subdivisions, was not itself a political subdivision. The Wyoming Joint Powers Act is similar to the Kansas Interlocal Cooperation Agreement Act in that it allows political subdivisions to create a public corporation that may issue revenue bonds to finance the joint undertaking. Wyo. Stat. § 16-1-107. In Weston CountyHospital, the Wyoming Joint Powers Board argued unsuccessfully that it was a political subdivision because the entities that created it were political subdivisions.
 "The argument the Board advances is that any such aggregate of `political subdivisions' inherently must be recognized as a `political subdivision.' This sophisticated argument is an application of the adage that the `whole is equal to the sum of its parts.' In addition, the further contention is that any separate body, board or agency created by another entity or entities must be for all intents and purposes essentially the same as the entity or entities out of which it is formed. . . .
 "The fallacy in this contention is the assumption that, by the creation of a joint powers board, the participating entities in some manner merge so as to form a body that is essentially the equivalent of their individual identities. This is not the case. The participating entities, whatever they may be, do not merge. Instead, they simply agree to create and support a different and independently managed organization that exists and functions for their mutual benefit. In doing so, they do not surrender or delegate any of their individual rights and prerogatives. . . . A governmental entity that is formed by a coalition of `political subdivisions' is not another `political subdivision,' unless it somehow is possessed of the criteria identified in Witzenburger, supra." 841 P.2d at 846-847.
We agree with the rationale in the Weston CountyHospital Joint Powers Board case. The Kansas Rural Water Finance Authority is not the sum of its parts. It is not transformed into a political subdivision because it acts on behalf of the political subdivisions that created it. The Kansas Legislature has defined political subdivision in myriad ways and it can do so again if it determines that the Authority should be eligible to borrow from the Public Water Supply Loan Fund. Until such time, it is our opinion that the Kansas Rural Water Finance Authority is not a municipality for purposes of borrowing funds from the Public Water Supply Loan Fund established by K.S.A. 1996 Supp. 65-163e.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm