## HOLLIS BOWSER

*vs.*

## STATE OF MARYLAND.

*Criminal Law—Breaking Dwelling House in Day Time—Burglary—Indictment—Allegation of Time—Judicial Notice—Joinder of Counts.*

Code, Article 27, Section 33, providing for a penitentiary sentence upon one convicted of breaking a dwelling house in the day time, with intent to commit murder or felony therein, does not make the offense burglary or a felony, which it was not at common law, and consequently an indictment therefor should not allege that the traverser "feloniously and burglariously broke and entered."                    pp. 344, 345

That the Code provision as to entering a dwelling house in the day time is under the subdivision "Burglary" does not make such offense burglary.                    p. 344

That the indictment charged the defendant with entering a dwelling house on the 29th day of June, 1919, "about the hour of 6 in the morning," sufficiently shows the entry to have been in the day time, within the meaning of the statute.        p. 346

That the indictment contained the word "about" before the hour named does not affect its sufficiency to inform the traverser that he was charged with breaking into a dwelling house in the day time.                    p. 347

The courts take judicial notice of the duration of day or night at a particular place and time, and consequently can take judicial notice of the fact that 6 o'clock on June 29th, 1919, was in the day time.                    p. 348

Where there is no exception in the record, and the case is presented on appeal only by the action of the lower court in overruling a demurrer to the indictment and a motion to quash, that the State was allowed to offer evidence that the crime was committed at an hour of the day entirely different from that alleged in the indictment is not available on appeal.        p. 349

Under an indictment for entering a dwelling house in the day time, on a date and at an hour named, the State may prove an entry at any hour on that date, provided only it was in the day time. p. 349

Different counts may be joined to meet the proof as it may develop. p. 350

A count for larceny may be joined with a count for entering a dwelling house in the day time with intent to commit a felony. p. 350

A motion to require the State to elect between different counts of the indictment is addressed to the discretion of the trial court. p. 350

*Decided April 21st, 1920.*

Appeal from the Circuit Court for Harford County (HAR-LAN, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and OFFUTT, JJ.

*John S. Young,* for the appellant.

*Alexander Armstrong, Attorney General,* with whom was *Walter R. McComas, State's Attorney for Harford County,* on the brief, for the State.

BOYD, C. J., delivered the opinion of the Court.

The indictment in this case contains three counts. The first alleges that the traverser

> "on the 29th day of June, in the year of our Lord nineteen hundred and nineteen, about the hour of 6 in the morning of the same day, at the county afore-said, the dwelling house of one Ernest Volkhart, there situate, unlawfully did break with intent to commit a certain felony there and therein, to wit," etc.

The second count is the same excepting it alleges the dwelling house to be that of one Affena Ripkin, and the third charges him with larceny.

There was a demurrer to the indictment and to each count thereof, which was overruled (the record states that it was to a plea, but that is corrected by agreement). There was also a motion to quash which was overruled, and the traverser then entered the plea of "not guilty." He was convicted and sentenced to confinemnt in the penitentiary for three years. This appeal was taken, and the only questions properly before us are presented by the rulings on the demurrer and the motion to quash.

It is contended that the first and second counts are defective because it is not alleged that the traverser feloniously and burglariously broke and entered, etc., but under our decisions that contention cannot be sustained. The statute on which those counts are based (Sec. 33 of Art. 27 of Code) does not make the offense burglary, or a felony. To constitute burglary at common law the breaking must have been in the night time, while this statute provides that:

> "Every person, his aiders, abettors and counsellors, who shall be convicted of the crime of breaking a dwelling house in the day time with the intent to commit murder or felony therein * * * shall be sentenced to the penitentiary for not less than two nor more than ten years."

The fact that in the Code this section is under the subdivision "Burglary" is not material. There are a number of instances in Article 27 of the Code where crimes are classified under a particular head which do not amount to the crime under which they are so placed. For example, Section 422 is under the subdivision "Rape," but no one would contend that the violation of that section would be rape, as the statute declares that it shall be deemed a misdemeanor and provides that "nothing in this section contained shall be construed to affect or interfere with the law relating to the crime

of rape as now in force in this State." Section 294 is under
the head of "Larceny," although in important respects that
section falls far short of larceny and is declared by the stat-
ute to be a misdemeanor. It was said in *State* v. *Popp,* 45
Md. 432, 437, and repeated in *Dundalk, etc., Ry. Co.* v.
*Gov. Smith,* 97 Md. 177, that: "In arriving at the true con-
struction of any particular section of the Code very little
reliance can, we think, be placed upon the *heading* under
which it may be found." The crimes covered by Section 33
are not made felonies, and in this State "only those are
felonies which were such at common law, or have been so
declared by statute." *Dutton* v. *State,* 123 Md. 373, 378.
In *Black* v. *State,* 2 Md. 376, the indictment charged that
the traverser "a certain stack of hay of and belonging to one
Aaron Miller, *feloniously,* unlawfully, wilfully and mali-
ciously did burn," etc. The Court held that that was not a
felony at common law or under the statute, and that no valid
judgment could be pronounced. Other cases in this State
could be cited to the same effect, but it is only necessary to
add that it would have been error to have alleged that the
traverser did feloniously and burglariously break and enter,
etc., as it was not a felony and was not burglary at common
law, or made so by the statute under which he was indicted.
There is nothing in *Robinson* v. *State,* 53 Md. 151, or *Smith*
v. *State,* 106 Md. 39, cited by appellant, to the contrary of
what we have said. In the former the Court held that the
evidence offered and rejected below was relevant, as reflect-
ing upon the intent with which the act was done. The stat-
ute passed on in *Smith* v. *State* provided that any person who
broke and entered, either by day or night, any building,
whether inhabited or not, and opened or attempted to open
any vault, safe or other secure place by the use of explosives
shall "be deemed guilty of burglary with explosives," and a
higher penalty than for ordinary burglary was authorized.

It is also contended that those counts were defective be-
cause the time is insufficiently alleged in order to comply

with the statute, but we are of the opinion that the charge
that on the 29th day of June, 1919, "about the hour of 6
in the morning of the same day" did sufficiently show that
the traverser was charged with breaking a dwelling house in
the day time. It would scarcely be contended that that would
be a sufficient allegation of time in an indictment for bur-
glary at common law, and in this State we are governed by
the common law in reference to that crime, as our statute
simply prescribes the punishment for burglary, without de-
fining what should constitute it, or affecting the requirements
of the common law, in order to convict of that crime. "Bur-
glary, at common law, is the breaking and entering the dwell-
ing house of another in the night, with intent to commit some
felony within the same, whether the felonious intent be exe-
cuted or not." 2 *Wharton Crim. Law* (11th Ed.) 1187,
Sec. 966; 5 *Am. & Eng. Enc. of Law*, 44; 9 *C. J.* 1009. It
could not be correctly said that 6 o'clock in the morning on
the twenty-ninth of June is in the night time. It is said
in 9 *C. J.* 1021 that: "In the absence of statutory provision
to the contrary, the 'night time,' within the definition of bur-
glary, is, as was held at common law, that period between
sunset and sunrise during which there is not daylight enough
by which to discern a man's face." In the note to that state-
ment there is a quotation from 4 *Black. Com.* 224 that:
"The malignity of the offense does not so properly arise from
its being done in the dark, as at the dead of night, when all
the creation, except beasts of prey, are at rest, when sleep
has disarmed the owner and rendered his castle defenseless."
In 4 *R. C. L.* 425, Par. 13, it is said: "As has been seen,
the burglarious act, at common law, must have been com-
mitted in the night season. This was not confined to the
exact period between sunrise and sunset (*sic*), and the rule
is thus laid down by *Blackstone*: 'If there be daylight or
crepusculum enough, begun or left, to discern a man's face
withal, it is no burglary. But this does not extend to moon-
light.' This rule of *Blackstone* is substantially supported in

those States where there is no statutory definition of night-
time." It would seem, therefore, to be certain that 6 o'clock
in the morning of June 29th would not be sufficient on a
charge of burglary, because it would not be within the part
of the twenty-four hours that would permit of a conviction
for that crime, but it would be day time, within the meaning
of a statute such as that now before us.

But great stress is laid on the fact that these counts used
the language *"about* the hour of 6," etc. The usual form of
a common law indictment for burglary alleges the breaking
to be "about the hour of," etc. 2 *Arch. Cr. Pl. and Pr.* 263;
1 *Wharton's Prec. of Indict. and Pleas* (3rd Ed.) 349, etc.
It is not deemed insufficient by reason of the word "about." 2
*Hawk. P. C.,* Ch. 23, Sec. 87; *State* v. *Seymour,* 36 Me.
225; 3 *Chitty's Crim. Law,* 1117; *Mathew's Crim. Dig.,* 434;
and other authorities cited in note on page 745 of 3 *Enc. of
Pl. & Pr.* The word "about" is defined in *Bouvier's Law
Dictionary* "Almost or approximately, near in time, quan-
tity, number, quality or degree." In the *Standard Diction-
ary,* among other definitions, is "Nearly, approximately, al-
most," etc., and in the *International Dictionary,* "Near, not
far from." There was no danger of any misunderstanding
on the part of the traverser as to whether he was charged
with breaking into a dwelling house in the daytime.

But the Courts take judicial notice of the computation of
time. "The time when the moon or the sun rises or sets on
a particular day is judicially known." 16 *Cyc.* 857. "Judi-
cial knowledge extends to the duration of day and night at
a particular place at a particular time, and therefore that
at a certain hour on a certain date it was or was not day-
light." 15 *R. C. L.,* 1100, Par. 32. The case of *State* v.
*Gunderson,* 56 *Wash.* 672, 106 Pac. 194, 21 Ann. Cas. 350,
is referred to, and in the notes in the *Ann. Cas.* on page 352
there are a number of cases cited to show that the Courts
will take judicial notice of the hours of sunrise and sunset

on a particular day. In *Munshower* v. *State,* 55 Md. 11, 24, where the prisoner had been found guilty of murder in the first degree, *Gruber's Almanac* was admitted in evidence to prove when the moon rose on the night in question, and this Court, through JUDGE MILLER, said, in passing on the admissibility of the evidence: "But an almanac forecasts with exact certainty planetary movements. We govern our daily life by reference to the computations which they contain. No oral evidence or proof which we could gather as to the hour of the rising on setting of the sun or moon could be as certain or accurate as that which we may obtain from such a source. Why then should not these computations, which are, after all, but parts of the ordinary computations of the calendar, be admitted as evidence? As was said by JUDGE COOLEY in considering an analogous question (*Sisson* v. *R. R. Co.,* 14 Mich. 497) 'Courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon, and demand evidence of a less certain and satisfactory character.'"

We know of our own knowledge that the sun rises before 6 o'clock on June 29th. Almanacs tell us that it does, and did in 1919, and no jury, especially in an agricultural county like Harford, where this crime was committed and the case was tried, could have failed to know that on the eighth day from the longest day in the year the sun rose in that county before 6 o'clock, and that it was daylight a considerable time before that. *Gruber's Hagerstown Almanack,* which is referred to in *Munshower's Case,* fixes time of sunrise on June 29, 1919, at 4.33 o'clock. We can have no doubt about the sufficiency of the allegation to show that the breaking was alleged to be at an hour which was in the daytime. In 15 *R. C. L.,* 1060, Par. 3, it is said: "If they are proper subjects of judicial knowledge, the judge may inform himself in any way which may seem best to his discretion, and

act accordingly. Judges may refresh their memories on matters properly subject to judicial notice from encyclopedias, dictionaries or other publications, but the mere appearance of facts therein does not entitle them to judicial notice, unless they are such as to be part of the common knowledge. So it is perfectly proper to receive evidence as to facts that will be judicially noticed, when it is received merely as an aid to the memory and understanding of the Court." But if there could be any doubt elsewhere about the question, it was settled in this State in *Line* v. *Line,* 119 Md. 403. JUDGE PATTISON, in speaking for the Court, discussed the subject at some length, and on page 407 said: "There are certain facts of which Courts may take notice and these facts need not be proven. It is said in 16 *Cyc.* 856, that 'The most prominent, perhaps, among the facts of science judicially known to the Courts are those, so to speak, of the almanac.' " Again on page 408 he said: "If called upon to take judicial notice of a fact of which he should take notice, or if in the trial of a case other facts therein suggest to him the probable existence of such fact, the judge may, in order to acquire information in respect thereto or to refresh his memory, refer to documents or books of reference. *Stephen's Digest,* 330."

The appellant stated at the argument, and in his brief, that the Court below allowed the State to offer evidence that the breaking was in the evening about the hour of 6 o'clock, and not in the morning. It is sufficient to say that no such question is before us, as there is no exception in the record, and the case is presented to us only by the action of the Court in overruling the demurrer and the motion to quash, but in order that there may be no misunderstanding about it we will add that that could have made no difference, as the State was not confined in its proof to the hour named, but could have proved that the breaking was at any other hour, if in the daytime, which 6 o'clock in the evening of June

29th clearly was.   9 *C. J.,* 1062;. 3 *Enc. of Pl. & Pr.,* 743-744 and notes.

There can be no question about the right to join different counts to meet the proof as it may develop, or to join a count for larceny with such as the first and second counts.   Without quoting from them, we will refer to *Weeks* v. *State,* 126 Md. 223, 227, where some earlier cases are cited; 9 *C. J.,* 1056-1058.   The record does not show that a motion to require the State to elect was made, but, if there had been, that would have been addressed to the discretion of the trial Court, as shown by the authorities just cited and *Smith* v. *State, supra.*

We have thus considered the questions raised by this appeal and finding no error in the rulings of the lower Court,. the judgment must be affirmed.

*Judgment affirmed, the appellant to pay the costs..*