# STATE OF MARYLAND *v.* CANOVA

[No. 41, September Term, 1976.]

*Decided November 15, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellant.

*William C. Miller,* with whom were *James Robert Miller, Harvey B. Steinberg* and *Richard F. Stefanelli* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court. MURPHY, C. J., and ELDRIDGE, J., dissent and ELDRIDGE, J., filed a dissenting opinion in which MURPHY, C. J., concurs at page 500 *infra.*

The issue for decision in this appeal is whether the Circuit Court for Montgomery County erred in dismissing criminal informations filed against Joseph Canova. The issue concerns the crime of bribery under the law of this State and the sufficiency of the charging documents in light of that law.

## STATEMENT OF THE CASE

On 16 March 1976 four criminal informations were filed in the Circuit Court for Montgomery County informing the court that Canova bribed [1] and attempted to bribe [2] Elmer Wheeler on 13 November 1974, and that he bribed [3] and attempted to bribe [4] Stuart B. Torrence on 14 July 1974 to 8

---

1. Criminal No. 17496
2. Criminal No. 17491
3. Criminal No. 17498
4. Criminal No. 17497

January 1975. The charging documents declared that Wheeler and Torrence were each "an employee of the Washington Suburban Sanitary Commission, a municipality or other political subdivision of the State" and that Canova had given or offered to give each employee forty dollars "in order to influence said employee of said Commission in the performance of his official duties in violation of Article 27, Section 23, Annotated Code of Maryland." Canova filed a motion to dismiss each information and the State answered. Upon hearing, the informations were dismissed with prejudice by order of the court issued 7 June 1976. The State appealed from the order to the Court of Special Appeals. Courts Art. §§ 12-302 (c) and 12-308. We granted a writ of certiorari before decision by that Court. Courts Art. §§ 12-201 and 12-203.

## THE LAW OF BRIBERY

### The Common Law

As recognized by the common law in this country, "[b]ribery is the corrupt payment or receipt of a private price for official action." R. M. Perkins, Criminal Law 469 (2d ed. 1969). At the common law, bribery and an attempt to bribe are misdemeanors. 3 Wharton's Criminal Law and Procedure 778 (Anderson 1957); Clark & Marshall, A Treatise on the Law of Crimes 1032 (7th ed. 1967); R. M. Perkins, Criminal Law, supra, at 479; 1 W. L. Burdick, The Law of Crime 428 (1946); 1 Russell on Crime 420 (J. W. C. Turner ed. 1950); cf. J. P. Bishop, Criminal Law 66 (9th ed. 1923). In early times, the offense was limited to the acceptance of a bribe by a man in a judicial place. 4 W. Blackstone, Commentaries *140; 3 Coke, Institutes 145; 4 S. Stephen, Commentaries 331 (6th ed. 1868). Over the years the crime was broadened to the point where it became equally an offense to give or to receive a bribe. Eventually the offense was extended to cover not only judicial officers and other persons concerned in the administration of justice, but also all public officers and finally to all persons

performing a public duty.[5] As summed up by *Perkins, supra,* at 469:

"[T]he common law as recognized in this country, came to look upon bribery as the giving of any valuable consideration or benefit to the holder of a public office, or to a person performing a public duty, or the acceptance thereof by such person, with the corrupt intention that he be influenced thereby in the discharge of his legal duty."

*The Statutory Law*

The inhabitants of Maryland are constitutionally entitled to the common law of England.[6] The common law, however, is subject to the control and modification of the legislature, and may be abrogated or changed as the General Assembly may think most conducive to the general welfare. *County Council v. Investors Funding*, 270 Md. 403, 416-419, 312 A. 2d 225, 232-234 (1973); *Heath v. State*, 198 Md. 455, 464, 85 A. 2d 43, 47 (1951); *Robb v. State*, 190 Md. 641, 650, 60 A. 2d 211, 213 (1948); *Matter of Davis*, 17 Md. App. 98, 102, 299 A. 2d 856, 859 (1973).

The General Assembly first dealt with the matter of bribery when it included the offense in ch. 138, Acts 1809, a comprehensive criminal statute.[7] Section VIII of the Act

---

5. It has been observed that "[a] study of the law of bribery offers an excellent opportunity to chart the ever-expanding growth in the recognition of an important social interest [that is] ... the disastrous effect of corrupting private influences upon official action." *R. M. Perkins, Criminal Law* 468 (2d ed. 1969). The authorities have traced this ever-expanding growth. *See* 2 *H. Broom & E. A. Hadley, Commentaries* 434 (1875) citing 1 *Hawk P. C.* 168; 1 *Russell on Crime* 420 (J. W. Turner, 10th ed. 1950); 2 *Wharton, Criminal Law* § 1857 (10th ed.); 2 *J. P. Bishop, Criminal Law* 62 (9th ed. 1923); 1 *W. L. Burdick, The Law of Crime* 428-429 (1946); *Clark & Marshall, A Treatise on the Law of Crimes* 1032 (7th ed. 1967).

6. "That the Inhabitants of Maryland are entitled to the Common Law of England" has appeared in the Declaration of Rights of each constitution of this State — as Art. 3 in that of 1776 and that of 1851; as Art. 4 in that of 1864; as Art. 5 in that of 1867.

7. The reasons for the legislation were expressed in the preamble:

"Whereas, it frequently happens, that men resigning themselves to the dominion of inordinate passion, commit great violations upon the lives, liberties or property, of others, which it is the great business of the laws to protect and secure, and experience envinces

pertained to offenses "affecting public justice or public property." The 4th subsection thereof provided:

"If any judge, or other person concerned in the administration of justice, take any illegal fee, gift or undue reward, to influence his behaviour in his office, and if any person shall give any money or thing to any judge, or other person concerned in the administration of justice, with intent to influence his behaviour in his office, every such judge or person shall be deemed guilty of bribery, and on being convicted thereof, shall be sentenced to undergo a confinement in the penitentiary for a term of time not less than two nor more than twelve years, to be treated as is prescribed by law, and shall be disqualified from holding any office for ever thereafter."

Codified as Art. 30, § 17 of the Maryland Code of 1860 (Mackall), this remained the statutory law on the subject until 1868.

The Constitution of Maryland of 1867 contained a mandate to the General Assembly to provide by law for the punishment of those who commit bribery.[8] Section 50 of Art. III declared:

"It shall be the duty of the General Assembly, at its first session, held after the adoption of this

---

that the surest way of preventing the perpetration of crimes, and of reforming offenders, is by a mild and justly proportioned scale of punishments . . . ." Acts 1809, ch. 138.

8. The Maryland Constitution of 1776 contained a limited bribery provision in § 54:

"That if any person shall give any bribe, present, or reward, or any promise, or any security for the payment or delivery of any money, or any other thing, to obtain or procure a vote, to be Governor, Senator, Delegate to the Congress, or Assembly, member of the Council, or Judge, or to be appointed to any of the said offices, or to any office of profit or trust, now created or hereafter to be created in this State — the person giving and the person receiving the same (on conviction in a court of law) shall be forever disqualified to hold any office of trust or profit in this State."

The Constitution of 1851, Art. 1, § 2 and the Constitution of 1864, Art. 1, § 5 contained similar provisions.

Constitution, to provide by Law for the punishment, by fine, or imprisonment in the Penitentiary, or both in the discretion of the Court, of any person, who shall bribe, or attempt to bribe any Executive, or Judicial officer of the State of Maryland, or any member or officer of the General Assembly of the State of Maryland, or of any Municipal Corporation in the State of Maryland, or any Executive officer of such corporation, in order to influence him in the performance of any of his official duties; and, also, to provide by Law for the punishment, by fine, or imprisonment in the Penitentiary, or both, in the discretion of the Court, of any of said officers, or members, who shall demand, or receive any bribe, fee, reward, or testimonial, for the performance of his official duties, or for neglecting, or failing to perform the same; and, also, to provide by Law for compelling any person so bribing, or attempting to bribe, or so demanding or receiving a bribe, fee, reward, or testimonial, to testify against any person, or persons, who may have committed any of said offences; provided, that any person, so compelled to testify, shall be exempted from trial and punishment for the offence, of which he may have been guilty; and any person, convicted of such offence, shall, as part of the punishment thereof, be forever disfranchised and disqualified from holding any office of trust, or profit, in this State." [9]

---

**9.** The provision was not adopted without debate. At the proceeding in the Convention on 10 July 1867, "Mr. Merrick moved to strike out the entire section. The ordinary penal laws provided for the punishment of the offenses therein named, and this was the first time that it was proposed to put such a provision in the organic law of this State. Was there any necessity for inserting such a provision? . . . Mr. Brown said the section was of very great importance. The question was simply this: Shall the ancient honor of the State of Maryland be kept untarnished or not? Because he [Mr. B.] saw that the purity of our institutions was involved, he earnestly advocated the adoption of this section, or something better. In reply to the objection of the gentleman from Howard [Mr. Merrick] he maintained that there was a necessity for this section. He could not prove before a jury that bribery and corruption had of late prevailed in our legislative bodies, but

Section 50 was one of the original provisions of the Constitution of 1867 and remains unchanged. Chapter 369, Acts 1868, repealing the former statute, was enacted in compliance with this constitutional mandate. *State v. Comes,* 237 Md. 271, 273, 206 A. 2d 124, 125 (1965); *Brown v. State,* 233 Md. 288, 293, 196 A. 2d 614, 616 (1964). See *State v. Panagoulis,* 253 Md. 699, 705, 253 A. 2d 877, 881, n. 2 (1969). Today it appears in the 1976 Replacement Volume of the Maryland Code as Art. 27, § 23, and, as amended from time to time, reads, in pertinent part, thus:

"If any person shall bribe or attempt to bribe any executive officer of the State of Maryland, any judge, or other judicial officer of this State, any member or officer of the General Assembly of Maryland, any officer or employee of the State, or of any county, municipality or other political subdivision of the State, including members of the police force of Baltimore City and the State Police or any member or officer of any municipal corporation of this State, or any executive officer of such corporation, in order to influence any such officer or person in the performance of any of his official duties; and if the Governor or other executive officer of this State, any judge, or other judicial officer of this State, any member of the General Assembly of Maryland or officer thereof, any officer or any employee of the State, or of any county, municipality or other political subdivision of the State, including members of the police force of Baltimore City and the State Police or any member or officer of any municipal corporation, or mayor or other executive officer thereof in this State shall demand or receive any bribe, fee,

the charge had been made, not only by the people, but by the press, and with such proofs that he believed it." *Debates of the Maryland Constitutional Convention of 1867* 286 (P. B. Perlman 1923).

William M. Merrick of Howard County and George Wm. Brown of the Second Legislative District of Baltimore City were listed among "the personnel of the Convention." After some other unreported debate, the section was adopted as reported. *See* Blondes v. State, 16 Md. App. 165, 180-181, 294 A. 2d 661, 668-669 (1972).

reward or testimonial for the purpose of influencing him in the performance of his official duties, or for neglecting or failing to perform the same, every such person so bribing or attempting to bribe any of such officers or persons, and every such person so demanding or receiving any bribe, fee, reward, or testimonial shall be deemed guilty of bribery . . . ."

As passed in 1868 the statute differed in substance from the statute now in effect in two respects. First, although ch. 369 specified the persons who may be bribees, it did not declare that such persons demanding or receiving a bribe were guilty of bribery and did not provide for their punishment, even though the constitutional mandate clearly required that this be done. This oversight was corrected by ch. 142, Acts 1882, which added the language with respect to the guilt and punishment of bribees as it now appears in § 23 of Art. 27.[10] Second, the 1868 Act did not include as bribees any officer or employee of the State, or of any county, municipality or other political subdivision of the State including Baltimore City and State police. Such persons were included as bribees by ch. 202, Acts 1933.[11]

We observe that under the statute bribery is not made a felony. "[I]n this State only those [crimes] are felonies which were such at common law, or have been so declared by statute." *Bowser v. State*, 136 Md. 342, 345, 110 A. 854, 855 (1920) quoting *Dutton v. State*, 123 Md. 373, 378, 91 A. 417, 419-420 (1914). The statute, however, authorizes imprisonment in the penitentiary upon conviction. Therefore, bribery and attempted bribery are excluded from those misdemeanors which must be prosecuted within one year after the offense was committed. Courts Art. § 5-106.

In *Blondes v. State*, 16 Md. App. 165, 184, 294 A. 2d 661

---

10. Acts 1881, ch. 142 also added justices of the peace as subject to bribery. They were deleted, however, by ch. 181, § 23, Acts 1972 upon establishment of the District Court of Maryland. *See* Courts Art. § 1-601.

11. The statute was also repealed and re-enacted with amendments by ch. 434, Acts 1937. The amendments limited the immunity provisions.

(1972),[12] the Court of Special Appeals said that Art. 27, § 23 is not ". . . more all inclusive than common law bribery." The court observed that upon a literal reading of the constitutional mandate set out in Art. III, § 50, ". . . no directive was given that the offense of bribery be provided for by statute; rather it directed legislative enactment of a statute to punish that common law crime. . . ." *Id.* at 182.[13] It found that the statute was declaratory of the common law. We agree that the statute embodies the basic elements of the common law without extending its boundaries to persons outside the ambit of the common law. With respect to the bribe-giver or briber, the statute now in effect speaks of "any person", and like the common law, anyone not entirely without criminal capacity, *see Matter of Davis,* 17 Md. App. 98, 100, 299 A. 2d 856, 858 (1973), may be a briber. With respect to the bribe-taker or bribee, however, the statute designates classes, and only a person within one of those classes is a potential bribee. In the words of *Glickfield v. State,* 203 Md. 400, 404, 101 A. 2d 229, 231 (1953), the statute limits bribery ". . . to specified public officers or public employees in the performance of their official duties." We list the classes of bribees as we find them in the statute from the provisions prohibiting the giving or attempting to give a bribe.[14]

1) any executive officer of this State;
2) any judge or other judicial officer of this State;

---

12. A substantial part of the opinion is omitted as reported in 294 A. 2d 661.

13. The Court of Special Appeals noted that expanding the class of bribees under the common law from judges and jurors to members of the General Assembly ". . . was not a statutory change but an evolution of the common law firmly established in both England and the United States at the time of the adoption of the Maryland statute." 16 Md. App. at 184.

14. The classes of persons specified as bribees in the provisions with respect to giving or attempting to give a bribe and in the provisions with respect to the demanding or receiving a bribe are the same although the language is not identical. In the latter, the "Governor" is expressly included in the first class as we have listed them, and a "mayor or other executive officer" is expressly included in the seventh class. Certainly, in any event, the Governor and a mayor would be encompassed within the classes designated.

3) any member or officer of the General Assembly of Maryland;

4) any officer or employee of the State;

5) any officer or employee of .any county, municipality or other political subdivision of the State;

6) members of the police force of Baltimore City and the State Police;

7) any member or officer of any municipal corporation of this State;

8) any executive officer of any municipal corporation of this State.

It may be that by the very breadth of the classes of bribees specified the Legislature intended to include all public officers and all public employees so that, under the statute, no public officer and no public employee is excluded as a bribee with respect to the performance of his official duties.[15] We do not so decide at this time, but assuming *arguendo* that such was the Legislative intent, it is immaterial in the posture of this case. We are not concerned with whether an employee of the Washington Suburban Sanitary Commission (the Sanitary Commission) may come within the statute as an employee of the State [16] because Canova was charged with bribing and attempting to bribe,

---

15. By other Acts, the General Assembly has expanded the common law crime of bribery by including persons who are not public officers or entrusted with a public duty. Md. Code, Art. 27, § 24 provides that a person who bribes or attempts to bribe any person connected with an athletic contest in this State shall be guilty of bribery and provides punishment therefore. Section 25 of Art. 27 creates the misdemeanor of the accepting of a bribe by any amateur or professional athlete or other person participating in any athletic contest to alter the outcome thereof and designates punishment therefore.

There are other Maryland statutes establishing punishment with respect to bribery of jurors and voters, who come under the common law offense, but are without Art. 27, § 23. See Md. Code, Art. 27, §§ 26 and 28; 1 *W. L. Burdick, The Law of Crime* 428 (1946).

We note that § 3 of Art. I of the Constitution of 1867 concerns bribery in elections.

16. For example, if the Sanitary Commission is an agency of the State, it may be that a Sanitary Commission employee is therefore an employee of the State.

not employees of the State, but employees of "a municipality or other political subdivision of the State." The question at this point, therefore, is whether the Sanitary Commission is a municipality or other political subdivision of the State.

## THE WASHINGTON SUBURBAN SANITARY COMMISSION

In *Maryland-National Capital Park and Planning Commission v. Montgomery County*, 267 Md. 82, 94, 296 A. 2d 692, 698 (1972) we held that the Maryland-National Capital Park and Planning Commission (the Planning Commission) was not a political subdivision within the meaning of Section 99 of Acts 1959, ch. 780 (the Regional District Act). The reasons for the holding advanced by Levine, J., speaking for a unanimous Court in a comprehensive opinion, are not only apposite but germane and material to the question now considered — whether the Sanitary Commission,[17] recognized in the opinion as ". . . a sister agency which possesses powers and characteristics similar to those granted to the [Planning Commission] . . .", is a municipality or other political subdivision of the State within the meaning of the bribery statute before us. *Id.* at 90, 296 A. 2d at 696. After a thorough examination of the authorities and the case law, the Court in *Maryland-National Capital Park and Planning Commission v. Montgomery County, supra,* was left with "little room for doubt as to what type of governmental bodies constitute 'political subdivisions' " and found that the Planning Commission possessed ". . . none of the characteristics which mark a 'political subdivision'." *Id.* at 93, 296 A. 2d at 698. We adopt the reasons supporting the holding in *Maryland-National Capital Park and Planning Commission v. Montgomery County, supra,* and, applying them, conclude that the Sanitary Commission is not a "political subdivision" within the meaning of Art. 27, § 23.

---

17. The Sanitary Commission was created by Acts 1918, ch. 122. Its members were constituted a body corporate with jurisdiction over the Washington Suburban Sanitary District. *See* Neuenschwander v. Washington Suburban Sanitary Commission, 187 Md. 67, 75-76, 48 A. 2d 593, 597 (1946); Washington Suburban Sanitary District Code, § 1-3 (1970).

The bribery statute speaks of "municipality or *other* political subdivision". (emphasis supplied) Thus, the Legislature used "municipality" in the frame of reference of a "political subdivision of the State." It would appear, therefore, that if the Sanitary Commission is not a political subdivision of the State, it is not a "municipality" within the contemplation of the statute.

"Municipality" and "municipal corporation" are frequently deemed to be synonymous by the courts, *see Neuenschwander v. Washington Suburban Sanitary Commission, supra,* at 74, 48 A. 2d at 597, by the Legislature, *see* Md. Code, Art. 23B, § 2 (1973 Repl. Vol.), and by the text writers, *see* 1 *E. McQuillin, Municipal Corporations* § 2.20 (3d ed. 1971). With respect to Art. 27, § 23, we find no logical distinction to be made between "municipality" and "municipal corporation" as used therein and are satisfied that the Legislature intended none.

The State points to *Neuenschwander* which, in the context of liability for a negligent act, held that "[t]he attributes of a municipal corporation are possessed by the Washington Suburban Sanitary Commission to an extent amply sufficient to bring it within that designation." 187 Md. at 75, 48 A. 2d at 597. Canova questions the continued vitality of this holding and points to our opinion in *Arnold v. Prince George's County,* 270 Md. 285, 311 A. 2d 223 (1973) where we noted:

"We have already observed that the lower court analogized the [Maryland-National Capital Park and Planning] Commission to the Washington Suburban Sanitary Commission and relied heavily upon the holding of our predecessors in Neuenschwander v. Washington Suburban Sanitary Commission, 187 Md. 67, 48 A. 2d 593, decided on July 23, 1946, that the Sanitary Commission was a 'municipal corporation.' We note that Chapter 423 of the Laws of 1955, *inter alia,* added § 9 'Definitions and limitations' to Art. 23A, entitled 'Corporations — Municipal,' which pro-

vided under the subtitle 'Home Rule' the following:

(b) *Certain corporations excepted.* — The term 'municipal corporation' does not embrace or include the Washington Suburban Sanitary Commission, or the Washington Suburban Sanitary District under the jurisdiction of such Commission; the term 'municipal corporation' does not embrace or include the Maryland-National Capital Park and Planning Commission, or the Maryland-Washington Metropolitan District or the Maryland-Washington Regional District under the jurisdiction of such commission.

This identical language has been continued unchanged until the present time. See Code (1957 Repl. Vol.) Art. 23A, § 9 (b). The Act of 1955, of course, was enacted some nine years after the decision in the Neuenschwander case." *Id.*, at 292, n. 1, 311 A. 2d at 227.

We note further that prior to *Arnold,* in §§ 1-1 (g) and 18-4 of the Washington Suburban Sanitary District Code (1970), the General Assembly declared that the term "municipal corporation" in Art. XI-E of the Constitution of Maryland, entitled "Municipal Corporations", ratified 2 November 1954, did not embrace or include the Washington Suburban Sanitary District. In the light of *Arnold* and the cited statutes, we are not persuaded to extend the holding attributed to *Neuenschwander* that the Sanitary Commission is a municipal corporation beyond the posture of that case, confining it to the liability of the Sanitary Commission with respect to the application of the law concerning liability of a municipal corporation for injuries caused by the defective condition of a street.

It was not claimed in *Maryland-National Capital Park and Planning Commission v. Montgomery County, supra,* that the Planning Commission was a municipality or municipal corporation. Thus, it was not necessary for us to make that

precise holding.[18] In arriving at the conclusion that the Planning Commission was not a political subdivision, however, we fully discussed the status of the Commission as a municipal corporation. Inherent in our finding that the Planning Commission was not a political subdivision of the State, was that it was not a municipal corporation. We said it is arguable that, in a narrow sense, the Planning Commission has aspects of a municipal corporation, but that it ". . . clearly does not fit the popular concept of a municipal corporation such as that intended by Article XI-E of the Constitution." 267 Md. at 90, 296 A. 2d at 696. By the same rationale, the Sanitary Commission, being a sister agency similar to the Planning Commission, is also not a municipal corporation or municipality.

Aside from the view that a commission like the Sanitary Commission does not fit the popular concept of a municipal corporation, two basic factors have been suggested upon which to determine whether an entity is a municipal corporation: (1) how many attributes of a municipal corporation does the entity possess and (2) in the light thereof, what is the particular purpose for the determination. *Hampton Roads Sanitation District Commission v. Smith,* 193 Va. 371, 68 S.E.2d 497, 500 (1952). When the Sanitary Commission here is examined with respect to the elements necessary to constitute a municipal corporation, see 1 *E. McQuillin, Municipal Corporations* § 2.07 (b) (3rd ed. 1971), a most crucial element is lacking, that is, the power of local self-government. Without that element, it does not meet the definition of a municipal corporation. In considering the second suggested factor, the particular purpose for the determination whether the Sanitary Commission is a municipal corporation concerns the applicability of a penal statute. It is firmly established that a penal statute must be strictly construed in favor of

---

18. Maryland-National Capital Park and Planning Commission v. Montgomery County, *supra,* was concerned with certain remedies which § 99 of the Regional District Act gave to public officials, not only of "any political subdivision" within the Regional District but also of "any municipality" therein.

the defendant. *Gatewood v. State,* 244 Md. 609, 617, 224 A. 2d 677, 682 (1966). The State concedes that the Sanitary Commission is not a municipal corporation ". . . using the term in its strict sense . . .", but urges that it is a "quasi-municipal corporation" and that this is sufficient to bring it within Art. 27, § 23. In the light of the rule of strict construction, we cannot accept the view that a "quasi-municipal corporation" satisfies the classification of "municipal corporation" used in the statute.

We hold that the Sanitary Commission is not a municipality, municipal corporation, or political subdivision of this State within the meaning of Art. 27, § 23.

## THE CRIMINAL INFORMATIONS

As we have seen, each of the criminal informations filed against Canova charged a violation of Art. 27, § 23 and alleged that a named bribee was "an employee of the Washington Suburban Sanitary Commission, a municipality or other political subdivision of the State." [19] We have determined that the Sanitary Commission is not a municipality or other political subdivision of the State. This presents the question of the effect of the incorrect designation of the bribee.

---

**19.** In the statement of undisputed facts agreed upon by the parties pursuant to Md. Rule 828, § g, the bribees were said to be "employed as inspectors for the W. S. S. C."

We note that the Washington Suburban Sanitary District Code (1970) includes provisions concerning bribery. Section 12-2, applying only to Commissioners appointed by the Montgomery County Council, provides in subsection (c) (1) (iii) that no commissioner shall solicit or accept a gift, favor, loan, service, promise, employment or thing which might influence or tend to influence the proper performance of his duty. Subsection (e) makes the offense a misdemeanor and authorizes punishment. Section 12-3, according to the Editor's note, derives from subtitle 61A of the Code of Public Local Laws of Prince George's County, 1963 ed., as amended, which is derived from ch. 875, Acts 1965, as amended. It is applicable only to elected and appointed officers and employees of Prince George's County and expressly includes "Prince George's County members of the Washington Suburban Sanitary Commission . . . appointed by the governor or hired or appointed by or under the authority of the county commissioners or any other elected official or officials . . . ." Subsection (a) (3). Bribery of such officials is made a crime and punishment is authorized by subsection (b) and the receiving of a bribe by such officials is made a crime and punishment is provided by subsection (c).

It is fundamental that a charging document must charge an offense prescribed by common law or by statute. A court exercising criminal jurisdiction has no power to render a verdict or impose a sentence under a charging document which does not charge an offense. *See Putnam v. State*, 234 Md. 537, 540-541, n. 1, 200 A. 2d 59, 61 (1964). Art. 21 of the Maryland Declaration of Rights declares that in all criminal prosecutions, every man has a right to be informed of the accusation against him. "[A] criminal charge must so characterize the crime and describe the particular offense so as to give the accused notice of what he is called upon to defend and to prevent a future prosecution for the same offense." *Corbin v. State*, 237 Md. 486, 490, 206 A. 2d 809, 811 (1965). It was early noted by this Court that "[c]ertainty to a reasonable extent, is an essential attribute of all pleading, both civil and criminal, but is more especially necessary in the latter, where conviction is followed by penal consequences." *State v. Nutwell*, 1 Gill 54, 56 (1843). We said in *Kearney v. State*, 48 Md. 16, 23-24 (1877): "The want of a direct allegation of any thing material in the description of the substance, nature, or manner of the crime, cannot be supplied by intendment, and hence it has always been held, that it is an essential requisite in every indictment that it should allege all matters material to constitute the particular crime charged, with such positiveness and directness, as not to need the aid of intendment or implication." All facts which make the act complained of a crime are matters of substance in a criminal charge. *Corbin v. State, supra*, at 489-490, 206 A. 2d at 811. *See Imbraguglia v. State*, 184 Md. 174, 40 A. 2d 329 (1944) and cases therein cited.[20] In *State v. Lassotovitch*, 162 Md. 147, 156, 159 A. 362, 366 (1932) we explained:

> "Every charge or accusation, whether at common law or under statute, must include at least two elements: First, the characterization of the crime;

---

[20.] For a discussion of the departure from the extremely technical rules of the early common law with respect to indictments, *see* State v. Wheatley, 192 Md. 44, 63 A. 2d 644 (1949).

> and, second, such description of the particular act alleged to have been committed by the accused as will enable him to properly defend against the accusation. In statutory crimes, where the statute includes the elements necessary to constitute a crime, the first of these requirements is gratified by characterizing the offense in the words of the statute; the second requires such definite and specific allegations as reasonably to put the accused on notice of the particular act charged, to enable him to prepare a defense and plead the judgment in any subsequent attempted prosecution."

Even if the charging document employs the statutory words, this does not mean that "it is unnecessary to allege such facts in connection with the commission of the offense as will certainly put the accused on full notice of what he is called upon to defend, and establish such a record as will effectually bar a subsequent prosecution for that identical offense ... However, it is clear that an indictment which charges the accused with the act prohibited by the statutory language, and does nothing more, would be fatally defective in failing to allege such other facts as would enable the accused to prepare his defense." *Id.*, at 150, 159 A. at 363. The rule regarding the description of a statutory offense in the language of the statute "has reference simply to the definition and characterization in legal terms of the criminal offense to be alleged in the indictment. It does not affect the requirement that the indictment should sufficiently identify the specific charge intended to be preferred." *Id.*, at 154, 159 A. at 365.[21]

The informations here incorrectly designated the Sanitary Commission to be a municipality or other political subdivision. This left the informations silent as to whether the bribees were in fact within one of the classes specified by

---

**21.** *Lassotovitch* also held that a defective indictment could not be made good by a bill of particulars, which a court may order upon motion of the defendant. Md. Rule 715. "While this is true, the bill of particulars is no part of the indictment; and the State cannot supplement an indictment by a bill of particulars to validate an otherwise defective indictment."

the statute. If they were not, no statutory offense was charged. It is not a crime to give an employee of the Sanitary Commission money to influence him in the performance of his official duties unless that employee comes under the statute. An accurate designation of the class of bribee was material in the description of the substance of the crime alleged. These informations lacked the essential requirement that all matters material to constitute the particular crime charged be alleged with such positiveness and directness as not to need the aid of intendment or implication. Canova had the right to stand on the informations. *Lassotovitch,* 162 Md. at 158, 159 A. at 366. Upon the showing on his motion to dismiss that the bribees were not employees of a municipality or other political subdivision of the State, the informations were left without such definite and specific allegations as reasonably to put Canova on full notice of what he was called upon to defend, if, indeed, they were sufficient to charge an offense. The defect in them was a matter of substance, for it was necessary to make the act complained of a crime, and the defect could not be cured by amendment without the consent of the accused. Md. Rule 714 a. The court did not err in dismissing the informations.

The order of the court below dismissed the informations "with prejudice." We construe this to apply only to the charging documents dismissed by the court, namely, Criminal Informations Nos. 17491, 17496, 17497 and 17498.

> *Order dismissing Criminal Informations Nos. 17491, 17496, 17497 and 17498 affirmed; costs to be paid by Montgomery County.*

*Eldridge, J., dissenting:*

Although I agree with the majority that the Washington Suburban Sanitary Commission does not fall within the classification of a "municipality or other political subdivision of the State," I cannot agree with the conclusion that the informations in this case are defective merely

because the legal status of the Commission is erroneously characterized.

The bribery statute, Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 23, expressly includes within the class of potential bribees "any officer or employee of the State, or of any county, municipality or other political subdivision of the State . . . ." In light of the sweeping language employed in describing the types of public employees enumerated therein, I believe that the Legislature clearly intended to encompass all Maryland governmental employees, including employees of the Washington Suburban Sanitary Commission. The erroneous legal characterization of the Commission as a "municipality or other political subdivision" should have been disregarded as surplusage, and the informations, which fully set forth all of the essential elements of bribery, should not have been dismissed.

Bribery, as the majority notes, ultimately developed at common law from a limited offense to a rather broad offense embracing "the giving of any valuable consideration or benefit . . . to a person performing a public duty . . . with the corrupt intention that he be influenced thereby in the discharge of his legal duty." R. M. Perkins, *Criminal Law* 469 (2d ed. 1969). The gist of the crime at common law is the "corrupt payment . . . of a private price for official action." *Ibid.* Chief Judge Murphy in *Blondes v. State*, 16 Md. App. 165, 182, 184, 294 A. 2d 661 (1972), pointed out that Art. 27, § 23, passed in compliance with the mandate of Art. III, § 50 of the Maryland Constitution, is declaratory of the common law. It is clear that at common law the payment of valuable consideration to a public employee performing a public duty, such as an employee of the Washington Suburban Sanitary Commission, to influence his performance of that duty, would constitute the offense of bribery.

Moreover, even if Art. 27, § 23, were not interpreted to include as potential bribees all Maryland public employees, but rather only to include certain limited categories of public employees, the alleged acts here would still constitute the

crime of bribery. The Washington Suburban Sanitary Commission, created by the General Assembly by a public general law and not a public local law, to perform governmental functions in more than one county, is, in my view, a State agency within the meaning of the bribery statute. *Cf. Pr. George's Co. v. Md.-Nat'l Cap.*, 269 Md. 202, 306 A. 2d 223, *cert. denied*, 414 U. S. 1068 (1973). Employees of a State agency are a class expressly enumerated in the bribery statute. Thus, employees of the Commission are clearly a potential class of bribees within the statute.

In *Lank v. State*, 219 Md. 433, 149 A. 2d 367 (1959), this Court, in considering the adequacy of an allegedly defective indictment, explained the purpose of a charging document as follows (219 Md. at 436):

> "[T]he purpose of a criminal charge — be it a state warrant, an information or an indictment — is twofold, that is, the charge must so characterize the crime and describe the particular offense 'as to put the accused on notice of what he is called upon to defend and to prevent a future prosecution for the same offense.' *Gray v. State, supra* [216 Md. 410]. ... As was pointed out in *State v. Wheatley*, 192 Md. 44, 63 A. 2d 644 (1949), modern courts disregard extremely technical rules and require only that an indictment shall fully allege the essential elements of the offense charged. See also *Shelton v. State*, 198 Md. 405, 84 A. 2d 76 (1951)."

And as stated in *State v. Lassotovitch*, 162 Md. 147, 150, cited by the majority, the charging document must allege "such ... facts as would enable the accused to prepare his defense." The critical issue is whether the informations in the instant case sufficiently characterize the crime of bribery and allege such facts so as to put Canova on notice of the offenses with which he is charged and to prevent a future prosecution for the same offenses. I believe that they do.

The informations charge Joseph Canova with both attempted bribery and bribery of two employees of the

Washington Suburban Sanitary Commission. More specifically, the informations allege that on specified dates Canova either gave or offered named employees of the Commission forty dollars "in order to influence said employee[s] of said Commission in the performance of . . . [their] official duties in violation of Article 27, Section 23." Under the tests set forth in *Lank v. State, supra,* and *State v. Lassotovitch, supra,* these informations are clearly sufficient. They allege all the essential elements of the crimes, namely giving or offering an employee of a public agency valuable consideration to influence that employee in the performance of his official duties. And the informations set forth such facts in sufficient detail to put the accused on notice of the precise offenses with which he is charged and to prevent a second prosecution for the offenses.

The majority states that "[i]t may be that by the very breadth of the classes of bribees specified the Legislature intended to include all public officers and all public employees so that, under the statute, no public officer and no public employee is excluded as a bribee with respect to the performance of his official duties." The Court's opinion goes on to state, however, that it is unnecessary to reach this issue because Canova is charged with bribing an employee of "a municipality or other political subdivision of the State." The majority concludes that because this is an improper characterization of the government agency involved, the informations are defective, as "an accurate designation of the class of bribee" was required.

If Art. 27, § 23, does include all Maryland public employees as I believe, and as the majority assumes, the informations are sufficient. The erroneous legal characterization of the Washington Suburban Sanitary Commission as a "municipality or other political subdivision of the State" is an unnecessary averment and should be treated as surplusage. Where an indictment contains unnecessary language which does not mislead the accused, that language may be treated as surplusage. If, disregarding the surplusage, the indictment otherwise states sufficient facts so as to allege an offense and prevent a second

prosecution for the same offense, the indictment will not be rendered defective by the inclusion of the surplusage. *Archer v. State*, 145 Md. 128, 144, 147-148, 125 A. 744 (1924) (holding that the recital of an erroneous legal characterization of facts did not render an indictment defective). *See also Marks v. State*, 230 Md. 108, 185 A. 2d 909 (1962), *cert. denied*, 373 U. S. 918 (1963); Wharton, *Criminal Procedure* § 265 (12th ed. 1975).

The majority holds that without a proper categorization of the legal status of the Washington Suburban Sanitary Commission, the informations failed to put Canova on notice of the charge which he was to defend. I cannot believe that informations which alleged that the accused, on a specific date, offered or gave to an employee of a governmental agency a sum of money to influence that employee in his official duties failed to adequately inform Canova that he was charged with bribing a public employee, an offense punishable under Art. 27, § 23. These allegations are clearly "sufficient to meet the practical needs which an indictment is intended to supply . . . ." *State v. Coblentz*, 167 Md. 523, 529, 175 A. 340 (1934).

Affirmance of the order dismissing the informations constitutes an adherence to the "extremely technical rules" regarding indictments which this Court long ago abandoned. *State v. Wheatley*, 192 Md. 44, 63 A. 2d 644 (1949). I would reverse.

Chief Judge Murphy has authorized me to state that he joins in the views expressed in this dissent.