RICHARD LEE PITMAN ET AL. *v.* WASHINGTON
SUBURBAN SANITARY COMMISSION ET AL.

[No. 100, September Term, 1976.]

*Decided February 3, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Timothy Guy Casey*, with whom were *Howard J. Thomas* and *Bradshaw, Thomas & Yeatman* on the brief, for appellants.

*Warren K. Rich, Assistant Attorney General*, with whom were *Paul T. Sisson, General Counsel*, and *J. Eugene Cleary, Assistant General Counsel*, for Washington Suburban Sanitary Commission, and *Richard S. McKernon, County Attorney* and *Nathan J. Greenbaum, Assistant County Attorney*, for Montgomery County, Maryland, on the brief, for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

The Maryland Environmental Policy Act, Chapter 702 of the Acts of 1973, codified as Maryland Code (1974, 1976 Cum. Supp.), § 1-301 through § 1-305 of the Natural Resources Article, provides that all state agencies, with regard to each proposed state action significantly affecting the environment, must prepare what is termed an "environmental effects report," which includes, among other things, a discussion of the effects of the proposed state action on the environment. The question presented in this case is whether the Washington Suburban Sanitary Commission is required to prepare an environmental effects report before purchasing a particular tract of land in Montgomery County for use as a disposal site for sewage sludge.

The Washington Suburban Sanitary Commission was created by Chapter 122 of the Acts of 1918 to provide

systems of water supply, sewerage and disposal facilities, and storm water drainage in Montgomery and Prince George's Counties. At the time this suit was filed, the Commission had proposed to purchase a 717 acre tract of land in Montgomery County (Site 216) for use as a sludge disposal site. It had sold bonds of its own issue in the amount of $3,500,000 to fund this purchase. Several persons residing in the vicinity of Site 216 and concerned about the possible effects of a sludge disposal site on the local environment brought this action in the Circuit Court for Montgomery County (John J. Mitchell, J.) to enjoin the Commission from purchasing Site 216 for the purpose of sludge disposal, alleging that no environmental effects report conforming to the requirements of the Maryland Environmental Policy Act had been prepared by the Commission. Thereafter, Montgomery County intervened as a defendant. At the close of the plaintiffs' case, the Commission's motion to dismiss was granted, and the plaintiffs' bill of complaint was dismissed with prejudice, on the ground that the purchase of Site 216 was not a "proposed state action" under the Environmental Policy Act, and that, therefore, the Commission was not required to prepare an environmental effects report. The plaintiffs took an appeal to the Court of Special Appeals, and this Court issued a writ of certiorari prior to any decision by the Court of Special Appeals.

The term "proposed state action" is defined in the Maryland Environmental Policy Act as "requests for legislative appropriations or other legislative actions that will alter the quality of the air, land, or water resources." Section 1-301 (c) of the Natural Resources Article. Thus, only if the purchase of Site 216 involved a "request for legislative appropriations or other legislative action" could the Commission have been required to prepare an environmental effects report.[1]

---

[1] 1. The relatively narrow definition of "proposed state action" in the Maryland Environmental Policy Act came about in the following manner. The Maryland Act was introduced in the 1973 legislative session as Senate Bill 689, a bill loosely modeled on the Federal Environmental Policy Act. As introduced, this bill defined "proposed state action" as "includ[ing] requests

The defendants, the Commission and Montgomery County, contend that in order to constitute a "proposed state action" under the Environmental Policy Act, the governmental function being proposed by a state agency must involve the *state* legislature, *i.e.*, the Maryland General Assembly, either through the appropriation process or other "legislative action," and that since the General Assembly took no legislative action concerning the purchase of Site 216, no environmental effects report is required. On the other hand, the plaintiffs contend that there was General Assembly involvement in connection with the proposed purchase of Site 216 so as to render the purchase a "proposed state action" under the terms of the Environmental Policy Act, thus requiring the preparation of an environmental effects report. In the alternative, plaintiffs contend that there was an appropriation of funds for the purchase of the site by the County Councils of Montgomery and Prince George's Counties, and that this was sufficient, under the Environmental Policy Act, to have required the preparation of a report. Plaintiffs go on to argue that the purpose of requiring the preparation of environmental effects reports was not solely to benefit legislative bodies or other governmental entities, but it was also to benefit the affected public, and that the Act thus gives the plaintiffs a judicially enforceable right, warranting injunctive relief.

We affirm the order of the circuit court on the ground that the Environmental Policy Act does not require the Commission to prepare an environmental effects report before the purchase of Site 216 because there has been no "proposed state action" within the meaning of the Act. We do not, therefore, reach the question of whether a state

---

for legislation, promulgation of rules or regulations, or actions involving the use of state funds or state owned lands." Thus, the original meaning of "proposed state action" would seem to have encompassed many actions taken by state agencies of their own accord, without regard to requests by the agencies for any specific "legislative" action. However, before adoption, amendments to Senate Bill 689 were submitted by the Secretary of Natural Resources. These amendments were eventually adopted without modification. *Journal of Proceedings of the Senate of Maryland, for the Legislative Session of 1973,* pp. 1982-1988. One effect of these amendments was the revision of the definition of "proposed state action" to its present form.

agency's failure to prepare an environmental effects report pursuant to the Act would give persons in the plaintiffs' position judicially enforceable rights.[2]

(1)

The plaintiffs' first argument is based upon the relationship between the Commission and the Blue Plains Sewage Treatment Plant. The Blue Plains plant is located in Washington, D. C., and, under an agreement between the Commission and the District of Columbia, the facilities of the Blue Plains plant are made available to the Commission. Pursuant to a 1974 memorandum of agreement between the Commission and the District of Columbia, the Commission proposed to acquire Site 216 for the disposal of a quantity of the sludge produced by the Blue Plains plant, proportionate to the Commission's use of the Blue Plains facilities. After pointing to this relationship between the Blue Plains plant and the acquisition of Site 216 by the Commission, plaintiffs go on to rely upon the fact that the General Assembly has appropriated funds for the Commission's portion of the capital costs for improvement to and enlargement of the Blue Plains plant (§ 12 of the Water Quality Loan Act of 1975, being Chapter 262 of the Acts of 1975). Plaintiffs argue that since the General Assembly has appropriated funds for improving the facilities at the Blue Plains plant, and since there is a relationship between the Blue Plains plant and the acquisition of Site 216, there exists a "request for legislative appropriation" under the terms of the Environmental Policy Act, and that the Commission is thereby required to prepare an environmental effects report.

---

**2.** There is another issue under the Environmental Policy Act involved in this case which we also need not decide. The Act requires only *state* agencies to prepare environmental effects reports, and it defines them as follows (§ 1-301 (d), of the Natural Resources Article):

"(d) '*State agencies*' includes the executive and administrative departments, offices, boards, commissions, and other units of the state government and any such bodies created by the state."

Both sides in this case agree that the Washington Suburban Sanitary Commission is a "state agency" under this definition. However, in light of our disposition of the case, we do not decide the status of the Commission. *Cf.* State v. Canova, 278 Md. 483, 493-497, 500-502, 365 A. 2d 988 (1976).

The plaintiffs' argument is not sound. The plaintiffs do not even suggest that any of the monies appropriated by the General Assembly were to be expended for the purchase of Site 216. In fact, it is undisputed that the entire purchase price of Site 216 was to be raised from the proceeds of the Commission's own bond issue. The Commission neither needed nor sought the General Assembly's approval or review of its bond issue and the use of the bond proceeds. The Commission has not, therefore, requested an "appropriation" or "other legislative action" from the General Assembly with regard to the purchase of Site 216, and hence there is, under the plaintiffs' first theory, no "proposed state action" which would require the preparation of an environmental effects report.

(2)

The plaintiffs' alternative argument is that there was a request for a "legislative appropriation" from the County Councils of Prince George's and Montgomery Counties in connection with the proposed purchase of Site 216 as a sludge disposal area, and that this constituted "proposed state action" within the meaning of the Environmental Policy Act, thereby requiring the preparation of an environmental effects report.

Among its other powers, the Washington Suburban Sanitary Commission is "empowered to issue bonds of the sanitary district, from time to time, in such amounts as it may deem necessary to carry on its work . . . including the acquisition of land." Washington Suburban Sanitary Commission District Code (1970), § 4-1 (a). The bonds are signed by the Commission members, and payment is guaranteed by Montgomery and Prince George's Counties. Such bonds in the amount of $3,500,000 were issued and sold, the proceeds to be applied to the purchase of Site 216. As the Commission is required each year to submit its capital and operating budgets for the approval of the County Councils of Prince George's and Montgomery Counties, the plaintiffs argue that the expenditure of the bond proceeds for the purchase of Site 216 must have been an item in one of

the submitted budgets. Since the powers granted to the county councils allow them to "add to, delete from, increase, or decrease an item of either budget," Washington Suburban Sanitary Commission District Code, § 1-4 (d), the plaintiffs contend that there was a request for a legislative appropriation within the Environmental Policy Act's definition of "proposed state action."

Assuming arguendo that there was a request to the *county councils* for "legislative appropriations" in connection with the proposed purchase of Site 216, we do not believe that the Environmental Policy Act's definition of proposed *state* action encompasses a request for appropriations made at the county level. Instead, the terms "legislative appropriations" and "other legislative actions" refer to actions by the Maryland General Assembly.

The legislative purpose of the Environmental Policy Act is set forth in the second section of the Act, § 1-302 of the Natural Resources Article, titled "Declaration of Policy." It is there provided, *inter alia,* that (§ 1-302 (j)):

> "The *General Assembly* has an obligation to the people of Maryland to review and evaluate proposed appropriations and other proposed legislation and the conduct of the state agencies in carrying out the policy set forth in this subtitle; . . . ." (Emphasis supplied.)

In order to insure that timely information concerning environmental effects be made a part "of the *decision-making processes of the state*" (§ 1-302 (i), *see also* § 1-302 (g) and (h)), the General Assembly required all *state agencies* to prepare environmental effects reports "with each proposed *state* action significantly affecting the quality of the environment" (§ 1-304 (a)). (Emphasis supplied.) The Act therefore speaks only of the *General Assembly's* obligation to review and evaluate proposed appropriations and other legislative actions; it speaks only of the decision-making processes of the *state*. The context, then, in which "proposed state action" is defined as "requests for legislative appropriations or other legislative actions" is

exclusively the state government level. In such a context, the natural meaning of the terms "legislative appropriations" and "legislative actions" would be appropriations and actions by the state legislature. Nothing in the Act suggests that the General Assembly intended to require a state agency to prepare an environmental effects report in connection with requests made to other bodies which might be deemed "legislative," such as county councils, municipal councils, etc.

It is noteworthy that in the Environmental Policy Act, the General Assembly specifically directed the State Secretary of Natural Resources to "issue guidelines to assist state agencies in the preparation of environmental effects reports in accordance with this subtitle" (§ 1-304 (b) of the Natural Resources Article), and the Secretary's guidelines inform the various state agencies that requests for "legislative actions" are "requests to the General Assembly." (Revised Guidelines for Implementation of the Maryland Environmental Policy Act, IV A & B.) *See State Roads Comm. v. Jones,* 241 Md. 246, 256, 216 A. 2d 563 (1966), and cases there cited.

As the Commission in this case made no request to the General Assembly for appropriations or other legislative actions in connection with the proposed purchase of Site 216, it was not required by the Maryland Environmental Policy Act to prepare an environmental effects report.

*Judgment affirmed.*
*Appellants to pay costs.*